Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Counsel for Plaintiff and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT HELLERVIK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>BACKBLAZE, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.: 3:15-cv-3956<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1)** **Breach of Contract;**<br>**(2)** **Violations of Cal. Bus. & Prof. Code § 17500; and**<br>**(3)** **Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Scott Hellervik, by and through his attorneys, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

### NATURE OF THE ACTION

1.      Backblaze operates a leading computer-data backup and recovery service that promises to "keep [its customers'] data safe while making the online backup and restore of [their] data easy."[1] In fact, recognizing that individuals' computers are digital repositories containing the most private of their files—including tax returns, Social Security Numbers, banking credentials, family photographs, and medical records—Backblaze heavily promotes that it "designed [its service] to be secure [and] encrypted."[2]

2.      Unfortunately, despite its customers' expectations and its own promises to the contrary, Backblaze does not actually implement adequate security measures to protect their highly sensitive personal data through all stages of its backup and recovery processes.

3.      In order to use Backblaze's service, consumers are required to visit Backblaze's website (backblaze.com), purchase a subscription (starting at $5 per computer per month), and install its proprietary data backup software. After setting up and installing the software, customers can start automatically backing up their data.

4.      To recover backed-up data, a customer can access and download their files by visiting Backblaze's website (typically to recover individual files or folders) or they can have an external hard drive containing their data shipped directly to them (typically for full restoration of backed-up data).

5.      The problem arises when customers needing to recover their backed-up data order external storage recovery drives from Backblaze. In that scenario, Backblaze *unencrypts* their

---

[1]      Backblaze, Inc., *How Backblaze uses Encryption to Protect your Data*, https://www.backblaze.com/backup-encryption.html (last visited June 11, 2015).

[2]      Backblaze, Inc., *Online Backup Made Easy*, https://www.backblaze.com (last visited June 11, 2015).

1 data, loads it onto a drive, and then ships it to them *entirely unprotected*. Worse still, on the

2 physical packaging containing the drives, Backblaze displays the customer's full name, mailing

3 address, email address, telephone number, and even advertises that the packages contain a restore

4 drive.

5       6.     Consumers (like Plaintiff Hellervik) choose Backblaze to backup and protect their

6 highly sensitive and personal information because it promises to secure and encrypt their data.

7 As such, when consumers purchase Backblaze's services, they purchase an indivisible bundle of

8 services, which includes encryption and industry-standard data security protections.

9       7.     Had Backblaze informed its customers that it would use inadequate security

10 measures to protect their data, customers (like Plaintiff Hellervik) would not have been willing to

11 purchase its services at the price charged, if at all. Accordingly, Plaintiff Hellervik brings suit on

12 behalf of himself and a Class of consumers (defined below), to enjoin Backblaze's unfair and

13 unlawful conduct and to recover the amounts they overpaid for its services.

14 **PARTIES**

15       8.     Plaintiff Scott Hellervik is a natural person and resident of the State of Tennessee.

16       9.     Defendant Backblaze, Inc., is a corporation existing under the laws of the State of

17 Delaware, with its principal place of business located at 500 Ben Franklin Court, San Mateo,

18 California 94401. Backblaze conducts business throughout this District, the State of California,

19 and the United States.

20 **JURISDICTION AND VENUE**

21       10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

22 because (a) at least one member of the putative class is a citizen of a state different from

23 Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs,

24 and (c) none of the exceptions under the subsection apply to this action.

25       11.     This Court has personal jurisdiction over Defendant because it is headquartered in

26 this District, conducts significant business in this District, and the unlawful conduct alleged in

27

28

the Complaint occurred in and emanated from this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and principal place of business in this District and a substantial part of the events giving rise to the Complaint occurred in and emanated from this District.

<b>INTRADISTRICT ASSIGNMENT</b>

13.     Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

<b>FACTUAL BACKGROUND</b>

**I.     An Overview of Backblaze's Data Backup and Recovery Services.**

14.     Backblaze owns and operates the most widely used computer-data backup and recovery service in the United States.

15.     Backblaze strongly encourages consumers to backup their computers using its service because it's "not a question of will you lose your data—it's when. Whether it's a catastrophic event, such as an earthquake, fire, flood, or . . . the more common virus . . . your PC will eventually lose your photos, music, and documents."[3] Fortunately for consumers, Backblaze claims to be a "great way to get all your files backed up automatically"[4] while, at the same time, designed "to be secure [and] encrypted."[5]

16.     In order to use its service, consumers can purchase a subscription (starting at $5.00 per month) and then download and install its proprietary data backup software. Then, its "application automatically finds all [their] photos, music, documents, and other irreplaceable data files—no matter where they are on [the] hard drive. [When the individual is] not using [their] computer, the application makes a copy of the files, compresses and securely encrypts them and sends them over the Internet to the remote Backblaze datacenters."[6]

---

[3]     *See* note 2, *supra*.

[4]     Backblaze, Inc., *How it Works*, https://www.backblaze.com/cloud-backup.html (last visited June 11, 2015).

[5]     *See* note 2, *supra*.

[6]     *Id.*

17.     In the unfortunate event of a data loss, the customer can retrieve copies of their data from Backblaze either online—by downloading their files over the Internet—or offline, by ordering an external storage device containing their files that's shipped directly to them.

18.     The ability to order an external storage device is a critical aspect of Backblaze's service. That is, if a customer loses *all* of his or her data and needs to do a full restore—which Backblaze warns is inevitable—recovering their data over the Internet will likely take considerable amounts of time and increase the cost of Internet data and bandwidth required to accommodate the download of large quantities of data. As such, when a customer needs to restore his or her data, the ability to order external storage devices containing their data is extremely important.

## II.     Backblaze Does Not Secure Its Customers' Data As Promised.

   A.     *An Overview of Backblaze's Promises to Secure Its Customers' Data.*

19.     Backblaze claims to be "committed to the security of [its customers'] data and has put in place industry standard physical and electronic enforcement mechanisms"[7] to protect their data. In fact, Backblaze heavily advertises that it will "keep [its customers'] data safe while making the online backup and restore of [their] data easy."[8] (*See* Figures 1 – 4 below, showing screenshots of a targeted advertisement for Backblaze displayed to users browsing the World Wide Web and also marketing materials contained on Backblaze's website, respectively.)

**Backblaze.com - Backblaze - Online Backup**
Ad www.backblaze.com/ ▾
Award-Winning Secure Online Backup. 15 Day Free Trial. Then $5/Month.
Award Winning Backup · Military Grade Encryption · Continuous & Automatic
Backblaze has 1,366 followers on Google+

(**Fig. 1.**)

---

[7]    *Id.*

[8]    *See* note 1, *supra*.

We designed Backblaze unlike any other online backup software. There is no need to pick folders and files. Easy. Secure. Your computer is going to love it.

(**Fig. 2.**)

Backblaze is packed full of great features. You can back up any attached external hard drive at no extra charge. There are no limits to file size, or network speeds. We designed Backblaze to be secure, encrypted, and high performance - that's why Backblaze runs natively on your Mac or Windows computer. You can also access your backed up files on your phone with the Backblaze mobile app.

(**Fig. 3.**)

## Your Data is Safe

Backblaze takes security seriously. All data is stored in our secure datacenters with 24-hour staff, biometric security and redundant power. Learn how Backblaze uses encryption to protect your data.

**Encrypted**
All your files are encrypted before being transmitted over SSL and stored encrypted.

**Personal Key**
You can use a personal encryption key for additional security. If you lose your password, Backblaze will be unable to send it to you.

**No Java Software**
Java is responsible for 91%* of security attacks. Backblaze's code is native to Mac and PC and doesn't use Java.

(**Fig. 4.**)

20.    Clicking on one of Backblaze's advertisements directs a consumer to its website, where frightening facts are presented to the reader regarding the dangers of manually backing up

their data at home or not backing up their data at all, including:[9]

- "It's not a question of will you lose your data—it's when. Whether it's a catastrophic event, such as an earthquake, fire, flood, or a mad panda that destroys your computer, or the more common virus, hard-drive crash, laptop left in a taxi, or coffee spill, your PC will eventually lose your photos, music, and documents.";

- "OK, But I Bought an External USB Hard Drive. Am I Safe? It's a good start, but as our vice president of design says, 'better safe than sorta safe.' Do you back up your data every day? Or do you sometimes forget? Are you sure you're backing up the right files? Are your computer and USB drive stored in the same place, making both susceptible to the same risks? What if you go on a trip and leave the drive at home? You can't backup or restore files while you're gone. And if you take it with you? Then you're more likely to lose both your laptop and USB drive at the same time!"; and

- "Backup, before you wish you had."

21.     Backblaze then prominently displays advertisements throughout its website encouraging consumers to use its service to "Eas[ily and] Secure[ly]"[10] protect their data—including on its homepage, so that each visitor sees them before signing up for its service. As such, Backblaze's customers reasonably expect that Backblaze will provide a bundle of secure data backup and recovery services through all stages of its backup and restore processes.

### B.    Unbeknownst To Its Customers, Backblaze Restores Their Data By Shipping Them Entirely Unprotected Hard Drives Containing Their Sensitive Personal Data.

22.     Customers purchase Backblaze subscriptions because, as described in Section II.A above, it claims to keep their data safe and secure, and because they may need to recover that

---

[9]     *See* note 2, *supra.*

[10]    *Id.*

1   data in the future.

2       23.     There are two primary methods for customers to recover their data: by

3   downloading their files via Backblaze's website or ordering an external storage drive containing

4   a copy of their files. Backblaze appears to protect customers' data as promised when restoring

5   data through its website. However, that option is typically only viable for restoring individual

6   files or small amounts of data. "Downloadable" restores may not always be the best option for

7   restoring large amounts of data because standard residential Internet speeds are often limited and

8   larger amounts of data will consume considerable amounts of time and network bandwidth,

9   which could lead to their Internet Service Provider reducing their Internet speed or, in certain

10  circumstances, charging fees for the additional data consumed.

11      24.     Ultimately, while there is value in being able make small, periodic data recovery-

12  related downloads, it is protection against the rarer catastrophes that really drives customers to

13  pay for Backblaze's services—and large data catastrophes are exactly the kinds of events that can

14  make download restore options so infeasible and the external storage drive restore options so

15  attractive. Furthermore, Backblaze offers unlimited storage at no increase in price. This

16  unlimited storage invariably leads to an increased amount of data that customers will store over

17  time, in addition to increasing their long-term dependence on Backblaze and its larger-capacity

18  recovery options.

19      25.     Accordingly, the combination of restore options that Backblaze's customers pay

20  for creates more value than the sum of their parts. In other words, the bundle of services

21  including the restore options is worth more than the combined value of each individual option,

22  since the combined package assures that different file recovery options will be available for

23  different needs throughout the entire spectrum of data loss possibilities. Protection throughout

24  the entire spectrum of data loss possibilities, in turn, is a prerequisite for peace of mind, which is

25  ultimately what Backblaze customers pay for.

26      26.     The problem is when customers recover their data from Backblaze using an

27

28

external storage device, Backblaze *unencrypts* their data, loads it onto a drive, and then ships it to them *entirely unprotected*.

27. Conspicuously absent from Backblaze's website is any mention that restoring data by ordering an external storage device is completely unsecured, unencrypted, and otherwise, entirely unprotected.

28. To make matters worse, Backblaze needlessly increases the security risks imposed by its inadequate data security practices by broadcasting certain sensitive information on the physical packaging labels it uses when sending its customers' unencrypted data through the mail. For instance, as shown in Figure 5 below, Backblaze displays on its shipping labels that the packages contain restored data of specific individuals and identifies them by full name, address, and telephone number.



(**Fig. 5.**)

29. Sending highly sensitive unencrypted personal information through the mail is reckless. By failing to encrypt customers' personal information before mailing it (and, in fact, actively *un*encrypting it), Backblaze allows nefarious parties to target these packages (given the sensitive information disclosed on the shipping labels), intercept them before reaching the intended customers, and access the their sensitive personal information—such as their Social Security Numbers, banking information, or medical information—by simply plugging the drive into another computer. Not surprisingly, as discussed further below, Plaintiff Hellervik's restore

drive was shipped to an unknown third-party and his highly sensitive personal information was accessed without permission.

## FACTS RELATING TO PLAINTIFF HELLERVIK

30.   On or around January 13, 2013, Plaintiff Hellervik visited Backblaze's website to search for a service to backup his computer data.

31.   After navigating to Backblaze's website, Plaintiff Hellervik viewed its advertisements and read its express warranties about keeping its customers' data secure, encrypted, and otherwise protected—which were the same as (or substantially similar to) the representations described in Paragraphs 15, 16, 19, and 21 and depicted in Figures 1 – 4 above.

32.   Relying upon these representations—namely that Backblaze would "secure [and] encrypt[]" his data through all stages of its backup and restore process and otherwise keep his data "safe while making the online backup and restore of [it] easy"—Hellervik purchased a subscription to Backblaze's service and began using it to back up his computer data.

33.   When he purchased the subscription to Backblaze, Hellervik—as all Backblaze customers are required to do—agreed to the Terms of Service, including its incorporated Privacy Policy, as well as the representations and obligations listed therein.

34.   Backblaze's Terms of Service specifically state that "[t]his is a legal agreement between you as an individual and Backblaze, Inc. ("Backblaze"), and governs the terms and conditions of your use of Backblaze Products . . . along with any written documentation expressly incorporated herein by reference and published from time to time by Backblaze."[11] In turn, these Terms of Service expressly incorporate by reference Backblaze's Privacy Policy. *Id*.

35.   Backblaze's Privacy Policy specifically confirmed its commitment to protect Hellervik's data.[12] For instance, the Privacy Policy states that "Backblaze encrypts all data on

---

[11]   Backblaze, *Terms of Service*, https://www.backblaze.com/terms.html (last visited June 4, 2015).

[12]   Backblaze, *Privacy Policy*, https://www.backblaze.com/privacy.html (last visited June 4, 2015).

your system and then sends it to Backblaze over an encrypted connection to ensure your data is secure . . . . Backblaze is committed to the security of your data and has put in place industry standard physical and electronic enforcement mechanisms. Backblaze products automatically encrypt your data before transmission and send the encrypted data using industry-standard Secure Socket Layer (SSL) encryption. Your data is stored in a secure location with access controls for authorized employees only."[13]

36.     Additionally, because he was signing up for a paid data backup service, Hellervik reasonably believed that Backblaze would protect and secure his personal information, including by using encryption and data access controls. Backblaze further confirmed his beliefs with the representations described above. Based on those beliefs, Hellervik purchased a subscription to Backblaze's service.

37.     Accordingly, when Hellervik purchased his Backblaze subscription, he reasonably expected Backblaze to provide, and, in fact, relied on it providing, continuous and robust data encryption features, industry-standard privacy and security protections, and each of the data restore options discussed above.

38.     Unfortunately, in early 2015, Plaintiff Hellervik suffered a complete loss of his computer data. In an attempt to recover it, Hellervik visited Backblaze's website. Because Hellervik entrusted Backblaze with a large quantity of personal files, a full restore of his data over the Internet would have consumed considerable time and resources. As such, Hellervik viewed Backblaze's options for recovering data via external storage drives.

39.     Nowhere during this process did Backblaze inform Hellervik that it would (i) decrypt his backup data, and (ii) send him an *unencrypted* and otherwise completely unprotected hard drive containing his data. Accordingly, Plaintiff purchased a "USB Hard Drive" containing his restored files from Backblaze for $189.

40.     Shortly after placing his order, Plaintiff Hellervik received a phone call from an

---

[13]     *Id.*

unknown third party. When Plaintiff answered the phone, he learned that Backblaze shipped his restore drive to a different Backblaze customer. Thereafter, in an attempt to return the drive to its rightful owner, that individual booted Hellervik's restore drive, (easily) accessed all of his sensitive private information, and searched through those files to find the owner's (Hellervik's) contact information. After culling through all of Hellervik's sensitive personal files, that individual discovered files containing Hellervik's name and number.

41.     Only through this incident did Plaintiff Hellervik discover that Backblaze was not, in fact, securing or protecting his data as promised.

42.     Had Backblaze disclosed that it did not actually encrypt and secure data when shipping external storage devices containing restored data, Hellervik would have viewed the purchased services as less valuable, and would not have purchased the services at all.

43.     Unfortunately, as a result of Backblaze's failure to implement its promised and paid-for security practices, Plaintiff Hellervik's private sensitive information was disseminated without his consent, and he was deprived of his control over that valuable information.

44.     As a result, Plaintiff Hellervik has suffered damages in (i) an amount equal to the difference in value between the services paid for and the services delivered, and (ii) the value of his personal data and lost property in the form of his breached and compromised information.

## CLASS ALLEGATIONS

45.     **Class Definition**: Plaintiff Scott Hellervik brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class and subclass of similarly situated individuals, defined as follows:

> **Class**: All individuals and entities in the United States who purchased subscriptions to Backblaze.

> **Subclass**: All members of the Class who attempted to restore data by purchasing external storage drives from Backblaze.

Excluded from the Class and Subclass (collectively the "Class," unless otherwise indicated) are: (1) any Judge or Magistrate presiding over this action and members of their

families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46.   **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, there are thousands of people in the Class, making joinder of each individual member impracticable. Ultimately, members of the Class will be easily identified through Defendant's records.

47.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include the following:

> (a)   whether Backblaze failed to protect and keep their data protected and secured, as promised;
>
> (b)   whether Backblaze's conduct described herein constitutes breach of contract;
>
> (c)   whether Backblaze's conduct described herein violates California's False Advertising Law (Cal. Bus. & Prof. Code § 17500); and
>
> (d)   whether Backblaze's conduct described herein violates California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

48.   **Typicality**: Plaintiff's claims are typical of the claims of all the other members of the Class. Plaintiff and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same transactions that were made

uniformly with Plaintiff and the Class.

49.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

50.    **Policies Generally Applicable to the Class**: Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

51.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

52.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     In order to purchase Backblaze's service, Backblaze required that Plaintiff and each member of the Class assent to its Terms of Service, which includes "any written documentation expressly incorporated herein by reference and published from time to time by Backblaze."[14] Among the written documents expressly incorporated is the "Backblaze Privacy Policy."[15]

54.     Backblaze's Privacy Policy states that "Backblaze is committed to the security of your data and has put in place industry standard physical and electronic enforcement mechanisms" and that it stores customers' data "in a secure location with access controls for authorized employees only."[16]

55.     Hellervik assented to Backblaze's Terms of Service and Privacy Policy.

56.     Together, the Terms of Service, Privacy Policy, and other written documentation published on its website—including the promises described in Paragraphs 15, 16, 19 and 21 and depicted in Figures 1–4 above—constitute a valid and enforceable contract between Hellervik and Backblaze governing his use and purchase of its services.

57.     Hellervik's contract was for Backblaze's data-backup and recovery services, a material part of which was the security and protection of his data.

58.     As part of this contract, Backblaze was obligated to secure and protect his backed-up data.

59.      Hellervik read Backblaze's representations regarding the security and protection of his backed-up data and considered them in making his decision to purchase a subscription to Backblaze. Had Backblaze represented that it would not actually secure and protect his backed-up data, Hellervik would have recognized the services as less useful, and would not have purchased the service at all.

60.     Hellervik performed his obligations under the contract by, among other things,

---

[14]    *See* note 11, *supra.*
[15]    *Id.*
[16]    *See* note 12, *supra.*

paying Backblaze's subscription purchase price and abiding by the Terms of Service and Privacy Policy.

61.     Unfortunately, as described in Section II.B above, Backblaze breached a material term of its contract with Hellervik to secure and protect his backed-up data.

62.     As a result of Backblaze's misconduct and systematic breaches of contract, Hellervik and the Class suffered actual damages, including an amount equal to the difference in the free-market value of the secure services they paid for and the insecure services they received.

63.     Accordingly, Plaintiff, on behalf of himself and the Class, seeks an Order declaring that Backblaze's conduct constitutes breach of contract, and awarding Plaintiff and the Class damages as described above.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the Class)**

64.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65.     Backblaze engaged in (and continues to engage in) advertising and marketing to the public, and offered for sale its data backup service on a nationwide basis, including in California. Backblaze publically represented and advertised that its data backup and restoration services were secure and that it would otherwise keep its customers' data protected, including through the assertions described in Paragraphs 15, 16, 19 and 21 and depicted in Figures 1–4 above.

66.     Backblaze did so with the intent to induce Hellervik and the Class members to purchase and continue using its data backup and restoration services. Indeed, the security of its service is one of Backblaze's core selling points.

67.     Despite its public advertising and marketing statements regarding the security of its services, Backblaze knew that its service was insecure, as it was in control of its own data security protocols, and was responsible for unencrypting customers' data before loading it to hard drives and mailing it to the customers (or whoever else happened to receive the hard

drives).

68.     Backblaze's advertising and marketing statements regarding the security of its services were untrue, misleading, and likely to deceive the public inasmuch as its advertisements and statements caused reasonable consumers to mistakenly believe that Backblaze's data backup and recovery services were secure.

69.     Accordingly, in making and disseminating the data security statements alleged herein, Backblaze knew or should have known that its statements were false and misleading and, therefore, in violation of Cal. Bus. & Prof. Code § 17500.

70.     Hellervik and members of the Class relied on Backblaze's data security statements in deciding to purchase a subscription to its data backup and recovery service.

71.     But for Backblaze's false and misleading advertisements and marketing statements, Hellervik and the Class members would not have purchased Backblaze's data recovery services at the prices charged, and would only have purchased them at a substantially discounted price, if at all.

72.     Thus, as a direct and proximate result of Backblaze's false advertising, Hellervik and the Class have suffered injury in fact and lost monies to Backblaze, including in an amount equal to the difference in the free-market value of the secure services they paid for and the insecure services they received.

73.     Accordingly, Plaintiff seeks an order (1) requiring Backblaze to cease the false advertising practices described herein; (2) requiring Backblaze to restore to the Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq*.
**(On Behalf of Plaintiff and the Class)**

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200,

*et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

76.     The UCL prohibits any unfair, unlawful, or fraudulent business acts or practices. A business practice need only meet one of these three criteria to be considered unfair competition.

77.     The utility of a service is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase the service. Any deception related to the utility of a service is materially misleading.

78.     As described herein, Backblaze engaged in unfair business practices as by, among other things: (i) misrepresenting that its data backup and recovery services were secure and that it would otherwise keep its customers' data protected, including through the assertions described in Paragraphs 15, 16, 19 and 21 and depicted in Figures 1–4 above; (ii) using the misrepresentations to induce consumers (like Plaintiff and the Class) into purchasing subscriptions to its data backup service; (iii) using the misrepresentations to induce consumers attempted to restore data (like Plaintiff and the Subclass) to purchase external storage drives from Backblaze; and (iv) selling a service that lacks the advertised utility (*i.e.*, lacks the advertised data security protections).

79.     Specifically, Backblaze represented to Plaintiff and the Class members that it would, among other things, "keep [their] data safe while making the online backup and restore of [their] data easy."[17]

80.     Plaintiff and the Class chose Backblaze to backup and protect their highly sensitive and personal information because of these promises to secure and encrypt their data.

81.     Unfortunately, Backblaze's data security promises were false. When customers needing to restore their backed-up data order external storage recovery drives from Backblaze, it *unencrypts* their data, loads it onto a drive, and then ships it to them *entirely unprotected*. As

---

[17]     *See* Note 1, *supra*.

described above, the ability to order encrypted external storage devices from Backblaze is a material part of its service.

82.   Plaintiff and the Class reasonably believed that Backblaze would protect their backed-up data and otherwise keep it secure when purchasing its service, those security protections were valuable to them, and the protections formed the basis of the bargain inasmuch as Plaintiff and the Class would not have subscribed to (*i.e.*, purchased) Backblaze's service at the price charged had it disclosed it was not actually protecting and keeping their data secured. As such, Backblaze's omissions regarding its true data security practices were material.

83.   To Plaintiff and the Class, Backblaze's as-promised services offered significantly more utility than what was delivered, which lacked meaningful data security protections. Thus, to Plaintiff and the Class, the Backblaze's secured services—as promised and paid-for—were substantially more valuable than the unsecure services received.

84.   Accordingly, had Plaintiff and the Class known that Backblaze did *not* actually protect their data as promised, they would not have been willing to purchase its services at the prices charged, if at all.

85.   Under the UCL, an "unfair" business practice is one that offends an established public policy or is otherwise immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Backblaze violated the UCL's "unfair" prong by causing substantial injury to consumers through the conduct described above. The injuries caused by Backblaze's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and could not have reasonably been known by consumers. Given the information asymmetry between Backblaze and consumers regarding its actual data security protections, Plaintiff and the Class could not reasonably have been known of the falsity of Backblaze's representations or avoided the harm they caused.

86.   An unlawful business practice under the "UCL" is one that violates a federal, state, or local law. Backblaze violated the UCL's "unlawful" prong because, as described in the

Second Cause of Action above, its conduct described above constitutes a violation of California's False Advertising Law.

87.     Additionally, as detailed in the First Cause of Action above, Backblaze's conduct constitutes a systematic and material breach of its contracts with Plaintiff and each of the members of the Class. As such, Backblaze's systematic breaches also constitute unlawful and unfair conduct in violation of the UCL.

88.     Pursuant to Cal. Bus. & Prof. Code §§ 17203 and/or 17204, Plaintiff Hellervik seeks an Order requiring Defendant to: (1) immediately stop the unlawful practices described in this Complaint; (2) ensure that it secures and otherwise protects its customers' backed-up data as promised; (3) provide restitution to Plaintiff and the Class in an amount equal to the difference in value between the backup services paid for and the services delivered; (4) provide restitution to Plaintiff and the Subclass in an amount equal to the purchase price of the unsecured external storage drives ordered; and (5) pay attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Scott Hellervik, individually and on behalf of the Class and Subclass, prays for the following relief:

A.     Certify this case as a class action on behalf of the Class and Subclass defined above, appoint Scott Hellervik as representative of the Class and Subclass, and appoint his counsel as Class counsel;

B.     Declare that Defendant's actions, as described herein, constitute breach of contract and violations of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500) and Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

C.     Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class members, including, *inter alia*: (i) an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein; and (ii) requiring Defendant to

1    secure and protect all data collected through the course of its business, as promised;

2         D.    Award appropriate damages and restitution to Plaintiff and the Class in an amount

3    to be determined at trial;

4         E.    Award Plaintiff and the Class their reasonable litigation expenses and attorney's

5    fees;

6         F.    Award Plaintiff and the Class pre- and post-judgment interest, to the extent

7    allowable; and

8         G.    Award such other and further relief as equity and justice may require.

9                                    **JURY TRIAL**

10        Plaintiff demands a trial by jury for all issues so triable.

11                                    Respectfully submitted,

12                                    **SCOTT HELLERVIK**, individually and on
                                      behalf of all others similarly situated,
13

14   Dated: August 28, 2015           By: /s/ Samuel M. Lasser
                                          One of Plaintiff's Attorneys

15                                    Samuel M. Lasser (SBN – 252754)
16                                    slasser@edelson.com
                                      EDELSON PC
17                                    1934 Divisadero Street
                                      San Francisco, California 94115
18                                    Tel: 415.994.9930
                                      Fax: 415.776.8047

19                                    Rafey S. Balabanian*
20                                    rbalabanian@edelson.com
                                      Benjamin H. Richman*
21                                    brichman@edelson.com
                                      J. Dominick Larry*
22                                    nlarry@edelson.com
                                      EDELSON PC
23                                    350 North LaSalle Street, Suite 1300
                                      Chicago, Illinois 60654
24                                    Tel: 312.589.6370
                                      Fax: 312.589.6378

25                                    *Pro hac vice admission to be sought.

26

27

28

---